# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ILLINOIS
### EASTERN DIVISION

| | | |
|---|---|---|
| DAVID JONES, | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | No. 14 C 1248 |
| v. | ) | |
| | ) | Judge Jorge L. Alonso |
| UPR PRODUCTS, INC., A.E.D. | ) | |
| MOTORSPORT PRODUCTS, LTD., | ) | |
| TIG-VISION, INC. a/k/a TIG-VISION | ) | |
| WELDING & FABRICATION a/k/a | ) | |
| TIG VISION RACE FABRICATION, | ) | |
| GALLEY MAID MARINE PRODUCTS, | ) | |
| INC., and WEBCO INDUSTRIES, INC., | ) | |
| | ) | |
| **Defendants.** | ) | |

## MEMORANDUM OPINION AND ORDER

Plaintiff David Jones suffered permanent injuries in a drag-racing accident due to the failure of the "A Arm" and "K Member" (collectively, "the Product"), two functionally-related auto parts he had purchased from defendant UPR Products, Inc. ("UPR") and installed in his 1994 Ford Mustang to modify the vehicle for drag racing. He filed this products liability action against UPR and numerous other entities alleged to have participated in the production or design of the Product. This case comes before the Court on four motions of the parties: (1) plaintiff's motion to strike UPR's affirmative defenses, (2) plaintiff's motion to dismiss UPR's counterclaim for spoliation of evidence, (3) defendant A.E.D. Motorsport Products, Ltd.'s ("AED") motion to dismiss Counts V-VIII, and (4) defendant Webco Industries, Inc.'s ("Webco") motion to dismiss Counts XVII, XVIII and XIX and to require more certain allegations.

## I. LEGAL STANDARDS

"A motion under Rule 12(b)(6) tests whether the complaint states a claim on which relief may be granted." *Richards v. Mitcheff*, 696 F.3d 635, 637 (7th Cir. 2012). Under Rule 8(a)(2), a complaint must include "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). The short and plain statement under Rule 8(a)(2) must "give the defendant fair notice of what the claim is and the grounds upon which it rests." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (ellipsis omitted). Similarly, under Rule 8(b)(1)(A), a party responding to a complaint must "state in short and plain terms" its defenses.

Under federal notice-pleading standards, a plaintiff's "[f]actual allegations must be enough to raise a right to relief above the speculative level." *Id*. Stated differently, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Twombly*, 550 U.S. at 570). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id*. (citing *Twombly*, 550 U.S. at 556). "In reviewing the sufficiency of a complaint under the plausibility standard, [courts must] accept the well-pleaded facts in the complaint as true, but [they] 'need[ ] not accept as true legal conclusions, or threadbare recitals of the elements of a cause of action, supported by mere conclusory statements.'" *Alam v. Miller Brewing Co.*, 709 F.3d 662, 665–66 (7th Cir. 2013) (quoting *Brooks v. Ross*, 578 F.3d 574, 581 (7th Cir. 2009)).

Pursuant to Rule 12(f) of the Federal Rules of Civil Procedure, a court "may strike from a pleading an insufficient defense or any redundant, immaterial, impertinent, or scandalous matter." Fed. R. Civ. P. 12(f). Motions to strike affirmative defenses are generally disfavored, but they may be granted where the challenged affirmative defenses are "insufficient on the face of the record." *Heller Fin., Inc. v. Midwhey Powder Co.*, 883 F.2d 1286, 1294 (7th Cir. 1989).

## II.     PLAINTIFF'S MOTION TO STRIKE UPR'S AFFIRMATIVE DEFENSES

UPR asserts the following affirmative defenses, among others:

### FIRST AFFIRMATIVE DEFENSE
Plaintiff's complaint, in whole or in part, fails to state a cause of action upon which relief may be granted under Illinois law.

### SECOND AFFIRMATIVE DEFENSE
Plaintiff's claims are barred, in whole or in part, by the Statute of Limitations. 735 ILCS 5/13-202.

### THIRD AFFIRMATIVE DEFENSE
Plaintiff's claims are barred, in whole or in part, by the Statute of Repose. 735 ILCS 5/13-213.

\* \* \*

### NINETEENTH AFFIRMATIVE DEFENSE
UPR Products, Inc. reserves the right to assert, plead and prove any and all affirmative defenses which investigation and discovery hereinafter may reveal to be appropriate.

(Answer, Affirmative Defenses & Countercl. at 18, 23.)  Plaintiff contends that these stock defenses, asserted without any supporting factual allegations, do not comply with federal pleading standards and should be stricken.  UPR responds that plaintiff wrongly applies the *Twombly/Iqbal* pleading standard to affirmative defenses, which neither the Supreme Court nor the Seventh Circuit has yet done.

As the parties' briefs make clear, district courts in this Circuit are split on the issue of what pleading standard affirmative defenses must meet.  *See FDIC v. Vann*, No. 11 C 3491, 2013 WL 704478, at \*3 n.7 (N.D. Ill. Jan. 23, 2013) (citing cases).  Some courts hold that the plausibility standard of *Twombly* and *Iqbal* applies, *see, e.g., Sarkis' Cafe, Inc. v. Sarks in the Park, LLC*, 55 F. Supp. 3d 1034, 1040 (N.D. Ill. 2014) (Lee, J.), while others hold that a lower standard should apply, *see, e.g., United States ex rel. Perez v. Stericycle, Inc.*, No. 08 C 2390, 2014 WL 983135, at \*1 (N.D. Ill. Mar. 12, 2014) (Marovich, J.).

The Court need not choose between these conflicting views because, at a minimum, affirmative defenses must meet the pre-*Twombly* pleading standard, which required defendants to give fair notice by pleading some minimal statement of facts in support of the affirmative defense, rather than pleading mere "bare bones" legal conclusions. *Heller*, 883 F.2d at 1295; *see United States ex rel. Conyers v. Kellogg, Brown & Root, Inc.*, No. 12 CV 04095, 2015 WL 1510544, at *7 (C.D. Ill. Mar. 30, 2015); *Ivanov v. Nyhus*, No. 14 CV 382, 2014 WL 5307936, at *2-3 (W.D. Wis. Oct. 16, 2014). The affirmative defenses plaintiff challenges are supported by no facts at all, and they are therefore inadequately pleaded. *See Perez v. PBI Bank, Inc.*, No. 14 CV 01429, 2015 WL 500874, at *3 (S.D. Ind. Feb. 4, 2015); *see also Pietrzycki v. Heights Tower Serv., Inc.*, No. 14 C 6546, 2015 WL 688510, at *3 (N.D. Ill. Feb. 17, 2015); *Sanchez v. Roka Akor Chi. LLC*, No. 14 C 4645, 2015 WL 122747, at *2 (N.D. Ill. Jan. 9, 2015) ("[Defendant] need not plead hypertechnical facts in support of its claim that [plaintiff's] claims are potentially time-barred. But something more than a bald assertion about the statute of limitations is necessary.")

The Court is not insensitive to the fact that it may be difficult or impossible for defendants to support their affirmative defenses with factual detail before discovery has taken place. However, this difficulty cannot justify pleading bare-bones legal conclusions as affirmative defenses; to approve such a practice would be to "allow parties simply to bombard their opponent with a laundry list of affirmative defenses without making any individualized inquiry into whether a particular defense actually applies to the facts of the case . . . [I]t seems to serve no purpose except to reserve defendants' rights to the maximum extent possible." *Chidester v. Camp Douglas Farmers Co-op.*, Nos. 13 CV 520, 13 CV 521, 2013 WL 6440510, at *3 (W.D. Wis. Dec. 9, 2013). As this Court has previously stated, using affirmative defenses as

reservations of rights (UPR's nineteenth affirmative defense is a particularly extreme form of this practice) is improper and unnecessary. *See In re Ventra Card Litig.*, No. 13 CV 7294, 2015 WL 1843044, at *7 (N.D. Ill. Apr. 21, 2015). Affirmative defenses must be pleaded based on the facts known, after a reasonable investigation, at the time of answer. If defendants must amend their pleadings in the future because they have learned facts in discovery that they did not know at the time of pleading, they may seek leave to amend pursuant to Rule 15, and leave will be freely granted as justice requires.

UPR's first, second, and third affirmative defenses are stricken with leave to amend because they state bare legal conclusions. UPR's nineteenth affirmative defense is stricken as "unnecessary clutter." *Heller*, 883 F.2d at 1294. UPR may file an amended answer consistent with this order, if it so chooses.[1]

### III.    PLAINTIFF'S MOTION TO DISMISS UPR'S COUNTERCLAIM FOR SPOLIATION

UPR has filed a counterclaim against plaintiff, contending that plaintiff committed the tort of negligent spoliation by failing to preserve the 1994 Ford Mustang he was driving at the time of the accident. Plaintiff has preserved the Product that he alleges caused the accident, but he allowed the rest of the vehicle to be scrapped.

Illinois does not recognize an independent cause of action for spoliation of evidence; rather, an action for spoliation is tied to general negligence law. *Boyd v. Travelers Ins. Co.*, 652

---

[1] Although plaintiff's motion to strike is granted, the Court does not wish to encourage the practice of filing motions to strike that "simply serve to add an extraneous round of briefing," *Messmer-Wilberg v. Bank of Am., N.A.*, No. 13 CV 1077, 2014 WL 3953630, at *2 n.1 (S.D. Ill. Aug. 13, 2014), when plaintiff could simply have ignored these affirmative defenses and saved the Court and the parties time and trouble. Motions to strike are disfavored partly because they "waste time . . . by requiring judges to engage in busywork and judicial editing without addressing the merits of a party's claim." *Ventra Card*, 2015 WL 1843044, at *6 (citing *U.S. Bank Nat'l Ass'n v. Alliant Energy Res., Inc.*, No. 09 CV 078, 2009 WL 1850813, at *3 (W.D. Wis. June 26, 2009)).

N.E.2d 267, 269-70 (Ill. 1995). A spoliation plaintiff is required to prove the elements of negligence, including that (1) the spoliation defendant owed the plaintiff a duty to preserve the evidence, (2) the spoliation defendant breached the duty by failing to preserve the evidence, (3) the loss of the evidence proximately caused the spoliation plaintiff to be unable to prove an underlying lawsuit, and (4) the spoliation plaintiff suffered damages. *Martin v. Keeley & Sons, Inc.*, 979 N.E.2d 22, 27 (Ill. App. Ct. 2012).

In *Hartmann Realtors v. Biffar*, 13 N.E.3d 350, 357-58 (Ill. App. Ct. 2014), the Illinois Appellate Court held that a defendant in a civil action may not bring a counterclaim against the plaintiff for negligent spoliation on the ground that the plaintiff failed to preserve evidence that may have assisted the defendant in the defense of the underlying lawsuit. The causation element is not met where a spoliation plaintiff merely alleges that the other party's failure to preserve evidence hindered its defense of a lawsuit; the spoliation plaintiff must allege that, because of the other party's failure to preserve evidence, it was unable to prove an affirmative claim of its own. *Id.*

Although neither party cites it, *Hartmann* is strikingly similar to this case. Just as the defendant in *Hartmann* was unable to state a counterclaim for negligent spoliation against the plaintiff because the counterclaim was not grounded in the loss of some affirmative claim the defendant may have had against the plaintiff, UPR cannot state a negligent spoliation counterclaim against plaintiff in this case. As in *Hartmann*, UPR merely states a "defense by another name," not a claim for negligent spoliation. *Id.* at 357.

Further, even if a spoliation claim could be based on a lost or weakened defense, UPR would still not state a viable spoliation claim because it has not sufficiently pleaded the causation element; that is, it does not state facts that, if proved, would show that UPR might have had a

"reasonable probability" of success in defending against plaintiff's underlying claims if UPR had preserved the Mustang. UPR never suggests any particular theory of the accident that the preservation of the Mustang might have allowed UPR to prove and that, if proved, would have provided a valid defense to plaintiff's claims. Even if UPR's allegations are all proved true, the importance of the unpreserved evidence was speculative at best. Plaintiff's counterclaim is therefore insufficient under Illinois law, *see Midwest Trust Servs. v. Catholic Health Partners Servs.*, 910 N.E.2d 638, 643 (Ill. App. Ct. 2009); *Chidichimo v. Univ. of Chi. Press*, 681 N.E.2d 107, 110-11 (Ill. App. Ct. 1997) (causation element not met where importance of the unpreserved evidence was merely "speculative"), and under federal pleading standards, *Twombly*, 550 U.S. at 555 ("Factual allegations must be enough to raise a right to relief above the speculative level . . . on the assumption that all the allegations in the complaint are true (even if doubtful in fact).").

UPR does not state a valid claim for negligent spoliation because it does not plausibly allege that, but for plaintiff's failure to preserve the Mustang, it would have had a reasonable probability of prevailing on a claim of its own against plaintiff. UPR's counterclaim is dismissed.

## IV.    AED'S MOTION TO DISMISS COUNTS V-VIII

AED contends in its motion to dismiss that the strict products liability claims against it, Counts V-VII, should be dismissed pursuant to Illinois's seller's exception, 735 Ill. Comp. Stat. 5/2-621, and the negligence count against AED, Count VIII, should be dismissed for failing to state a claim.

### A.  Strict Liability Counts and Illinois's Seller's Exception

Under 735 Ill. Comp. Stat. 5/2-621, known as the "seller's exception," a nonmanufacturing defendant facing strict products liability claims may be dismissed from the case if it can certify the correct identity of the manufacturer of the defective product. Al Lowe,

president of AED, has filed an affidavit in which he certifies that AED, a wholesale distributor of metal products, merely purchased and stocked metal tubes manufactured by Webco, sold a quantity of Webco's tubes to UPR, and shipped them to defendant Galley Maid Marine Products, Inc. ("Galley Maid"), at UPR's direction, without any knowledge of how the tubes would be used. Lowe avers that AED played no role in the design or manufacture of the Product and did not alter or modify the metal tubes in any way before selling them to UPR and shipping them to Galley Maid.

Plaintiff responds that AED has not properly certified the identity of the manufacturer of the Product because Lowe concedes in his affidavit that he does not know which of UPR, Galley Maid and Tig-Vision, Inc. ("Tig-Vision") actually manufactured the Product. According to plaintiff, as long it remains unclear which entity manufactured the Product, dismissal under section 2-621 is improper.

The Court disagrees. First, as AED explains, "the only manufacturer AED was required to identify was . . . Defendant Webco, the manufacturer of the metal tubing that AED purchased and distributed." (Reply, Dkt. 78, at 3.) AED identified Webco as the manufacturer of the metal tubing, and it certified that it did not alter or modify this product in any way before passing the tubing along to Galley Maid. This meets the requirements of section 2-621, which was designed for just such circumstances. *See Saieva v. Budget Rent-A-Car*, 591 N.E.2d 507, 511 (Ill. App. Ct. 1992) ("[T]he purpose of section 2-621 is to allow a nonmanufacturing defendant, who has not been shown to have created or contributed to the alleged defect, to defer liability *upstream* to the ultimate wrongdoer, the manufacturer.") (emphasis added); *Sims v. Teepak, Inc.*, 493 N.E.2d 721, 724 (Ill. App. Ct. 1986) ("The main thrust of the statute . . . remains that of a "seller's exception"; the seller may still be sued in the first instance, but may identify an upstream

defendant (the manufacturer) and thus escape ultimate liability where the seller has done nothing to create or contribute to the defect.").  The Court sees no reason to insist that AED not only identify the upstream manufacturer of the component it sold but also correctly identify what role the other defendants may have played in the design or manufacture of the Product *downstream* of AED.  If the component AED sold was defective, Webco is responsible; if the defect was introduced downstream, then the downstream manufacturer is responsible, *see Woods v. Graham Eng'g Corp.*, 539 N.E.2d 316, 319 (Ill. App. Ct. 1989) ("[A component] manufacturer will not be held liable if the injury resulted from a dangerous condition created by the party who created the final product.")  The Court sees no need for AED to remain in this case, unless facts learned in discovery show that circumstances are other than they presently appear.[2]  AED has met its burden under section 2-621.  Counts V-VII are dismissed.

## B.  Negligence

AED moves to dismiss Count VIII, in which plaintiff claims AED "negligently, improperly and carelessly failed to manufacture, design and sell the Product in a manner that could be utilized and withstand the forces for its intended purpose."  (Am. Compl. Count VIII ¶ 17.)  AED claims that Count VIII, as pleaded, is "merely duplicative of Plaintiff's strict liability claims against AED" (AED Mot. Dismiss at 8) except that it adds the phrase "negligently, improperly and carelessly," without also pleading the additional elements of a negligence claim.

A plaintiff asserting a products liability claim based on negligence must establish all the familiar elements of common-law negligence: duty, breach, proximate causation, and damages. *Calles v. Scripto-Tokai Corp.*, 864 N.E.2d 249, 263 (Ill. 2007).  "The key distinction between a negligence claim and a strict liability claim lies in the concept of ***fault***."  *Id.* (emphasis added).

[2] Under section 2-621, AED may be reinstated if discovery shows that Lowe's affidavit is inaccurate.  *See* 735 Ill. Comp. Stat. 5/2-621(b)(2); *Lexington Ins. Co. v. Office Depot, Inc.*, 943 F. Supp. 2d 844 (N.D. Ill. 2013).

To state a products liability claim based on negligence, the plaintiff must show that the defendant "knew or should have known of the risk posed by the product." *Id.* at 264; *Jablonski v. Ford Motor Co.*, 955 N.E.2d 1138, 1159 (Ill. 2011); *Brobbey v. Enter. Leasing Co. of Chi.*, 935 N.E.2d 1084, 1093 (Ill. App. Ct. 2010). It is not enough simply to show that the product is defective or unsafe. *Brobbey*, 935 N.E.2d at 1093.

AED contends that, although plaintiff alleges that AED had a duty to sell products free from dangerous defects and that a product AED may have been involved in producing caused his injuries, plaintiff fails to state a claim for negligence because he fails to allege that AED's actions breached any standard of care, *i.e.*, he does not allege facts demonstrating that AED was in some way at fault for selling a defective product. *See id.* The Court agrees.

AED cites *Lexington Insurance Co. v. Office Depot, Inc.*, 943 F. Supp. 2d 844 (N.D. Ill. 2013), in support of its position. In *Lexington*, as in this case, a nonmanufacturing defendant (Office Depot) moved to dismiss the strict liability products claims against it pursuant to the seller's exception, and it moved to dismiss a negligence count for failing to state a claim. As in this case, the plaintiff's negligence count against the nonmanufacturing defendant essentially restated the strict products liability allegations, without making additional fact-based allegations that the nonmanufacturing defendant "knew or should have known that the [product] was defective at the time" the defendant sold it. *See Lexington*, 943 F. Supp. 2d at 848. The court granted the nonmanufacturing defendant's motion to dismiss both the strict liability counts and the negligence counts.

This case is nearly identical to *Lexington*, and it requires the same result. Plaintiff has simply termed a strict products liability claim a "negligence" claim. This Court has already determined that strict products liability claims against AED must be dismissed pursuant to the

seller's exception. To state a negligence claim, plaintiff must allege that *all* of the elements of negligence are met, which entails alleging that AED is somehow at fault for the harmful condition of the Product. Plaintiff has failed to do so, and Count VIII is therefore dismissed.

## V.     WEBCO'S MOTION TO DISMISS

Webco moves to dismiss Counts XVII, XVIII and XIX, which allege strict products liability for defective design, defective manufacture and failure to warn. Webco contends that (1) these counts should be dismissed or stricken and repleaded as one count, as they are all based on the same factual allegations, and (2) these counts fail to state a claim because the allegations are so vague and indefinite that Webco cannot discern what role it is alleged to have played in the design, manufacture or distribution of the Product.

First, plaintiff responds that Counts XVII, XVIII and XIX are not duplicative because, although the factual allegations are similar, each of these three Counts seeks relief under a different theory. The Court agrees. These counts allege that Webco is liable for design defects in the Product, manufacturing defects in the Product, and failure to warn of the dangers of using the Product in the way that plaintiff used it, respectively. While there is certainly some repetition in the factual allegations—not surprisingly, considering that all counts stem from the same drag-racing injury—the allegations differ slightly from count to count in order to state a claim for relief under different theories within the arena of strict products liability. Plaintiff could perhaps have drafted the complaint more concisely, but the repetition alone provides no basis for striking or dismissing any of these counts.

Second, plaintiff responds that, while he simply lacks certain facts concerning the design and manufacture of the Product until he acquires them from defendants in discovery, he has pleaded sufficient factual content to allow the Court to draw a reasonable inference that Webco is liable for plaintiff's injury. Although it is true that the complaint is not a model of clarity or

precision, the Court agrees with plaintiff that the allegations may support a reasonable inference of Webco's liability.

Plaintiff alleges that he purchased the Product and installed it in his Mustang with the intention of using it for drag racing, and he was injured due to the defective design and manufacture of the Product and the lack of adequate warning of the dangers of using the Product. Importantly, he also alleges in Paragraph 8 that Webco, AED, Tig-Vision and Galley-Maid "may have provided the request[ed] materials and labor for the design and manufacture of the Product." The only defendant not mentioned in Paragraph 8 is UPR, the seller of the finished Product. (Am. Compl. ¶ 8.)

Webco replies that it cannot discern whether it is being sued as a component manufacturer or a manufacturer of the finished Product, and "[l]egally there is a major difference between being a product manufacturer and seller, as opposed to a component provider." (Reply at 2.) The Court fails to see the difficulty. Although plaintiff admits that "the defendants' relative roles with respect to the Product are [to] some degree uncertain at this time" (Resp. at 4), it is reasonably clear from the complaint that plaintiff is suing Webco as a component provider. Plaintiff alleges that Webco supplied "request[ed] materials or labor" used in the production of the Product; stated differently, an entity that was directing or controlling the production of the Product "requested" a contribution of "materials or labor" from Webco and other entities. The clear import of these allegations is that Webco was a component provider. Furthermore, and on a more basic, intuitive level, the Court notes the element of absurdity in Webco's position: presumably Webco knows that it does not manufacture drag racing parts, so plaintiff must be suing Webco as a component provider.

Webco may take the position that its materials were not defective or dangerous and that any dangerous or defective condition the finished Product may have been in was attributable not to Webco but to some downstream manufacturer who altered or assembled Webco's materials, but by taking that position Webco merely denies plaintiff's allegations; it does not establish that plaintiff has failed to state a claim. If Webco requires additional clarity as to plaintiff's allegations, it may seek it in discovery. Webco's motion to dismiss is denied.

## CONCLUSION

For the reasons set forth above, the Court (1) grants plaintiff's motion [45] to strike UPR's affirmative defenses, with leave to amend, if desired; (2) grants plaintiff's motion [47] to dismiss UPR's counterclaim for spoliation, without prejudice; (3) grants AED's motion [59] to dismiss Counts V-VIII, without prejudice; and (4) denies Webco's motion [61] to dismiss Counts XVII-XIX.

**SO ORDERED.**

ENTERED: **May 29, 2015**

**HON. JORGE L. ALONSO**
**United States District Judge**