IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| DAVID JONES, | ) |
| Plaintiff, | ) |
| | ) No. 14 C 1248 |
| v. | ) |
| | ) Judge Jorge L. Alonso |
| UPR PRODUCTS, INC., A.E.D. MOTORSPORT PRODUCTS, LTD., TIG-VISION, INC. a/k/a TIG-VISION WELDING & FABRICATION a/k/a TIG VISION RACE FABRICATION, GALLEY MAID MARINE PRODUCTS, INC., and WEBCO INDUSTRIES, INC., | ) |
| Defendants. | ) |

## MEMORANDUM OPINION AND ORDER

Plaintiff, David Jones, suffered permanent injuries in a drag-racing accident due to the failure of the "A-arm" and "K-member" (collectively, "the Product"), two functionally-related auto parts he had purchased from defendant UPR Products, Inc. ("UPR") and installed in his 1994 Ford Mustang. He filed this products liability action against UPR and numerous other entities alleged to have participated in the production or design of the Product. This case is before the Court on defendant UPR's partial motion for summary judgment pursuant to Federal Rule of Civil Procedure 56, in which defendant Galley Maid Marine Products, Inc. ("Galley Maid") joins. For the following reasons, the Court grants the motions in part and denies them in part.

## BACKGROUND

On October 6, 2012, plaintiff was injured in a drag-racing accident at the Byron Dragway in Byron, Illinois. (Pl.'s LR 56.1(b)(3)(B) Resp., ECF No. 104, ¶ 3.) He alleges that the cause

of the accident was the defective condition of the Product. (*Id.*) Plaintiff purchased the Product from a UPR representative at the Chicagoland Speedway and subsequently installed it in his 1994 Ford Mustang. (*Id.*, ¶ 4.) Plaintiff is an experienced driver who has participated in numerous drag-racing events and installed numerous A-arms and K-members. (*Id.*, ¶¶ 15-16, 25.) During the event on October 6, 2012, plaintiff performed a "wheelie," lost control of the vehicle and crashed into a wall. (*Id.*, ¶¶ 3, 7-8, 17.)

Prior to participating in the event at the Byron Dragway on October 6, 2012, plaintiff signed a Release and Waiver of Liability Assumption of Risk and Indemnity Agreement ("Release"). (*Id.*, ¶ 10.) The Release contained the following provisions:

> 2. [UNDERSIGNED] HEREBY RELEASES, WAIVES, DISCHARGES AND COVENANTS NOT TO SUE the promoters, participants, racing associations, sanctioning organizations or any affiliated entities thereof, track operators, track owners, officials, vehicle owners, builders and designers, drivers, crews, rescue personnel, and persons in any RESTRICTED AREA, promoters, sponsors, *equipment and parts manufacturers and suppliers*, advertisers, owners and lessees of premises used to conduct the EVENT(S), premises and event inspectors, surveyors, underwriters/brokers, consultants and others who give recommendations, directions, or instructions or engage in risk evaluation or loss control activities regarding the premises or EVENT(S) and for each of them, their directors, officers, agents, and employees, all for the purposes herein referred to as "RELEASEES" FROM ALL LIABILITY TO THE UNDERSIGNED, his/her personal representatives, assigns, heirs, and next of kin, FOR ANY AND ALL LOSS OR DAMAGE, AND ANY CLAIM OR DEMANDS THEREFORE ON ACCOUNT OF INJURY TO THE PERSON OR PROPERTY OR RESULTING IN DEATH OF THE UNDERSIGNED ARISING OUT OF OR RELATED TO THE EVENT(S), WHETHER CAUSED BY THE NEGLIGENCE OF ANY RELEASEE(S) OR OTHERWISE.
>
> 3. HEREBY AGREES TO INDEMNIFY AND SAVE AND HOLD HARMLESS the RELEASEES and each of them FROM ANY LOSS, LIABILITY, DAMAGE, FEES OR COSTS they may incur arising out of or related IN ANY MANNER TO MY ATTENDANCE AT OR PARTICIPATION IN THE EVENT(S), AND WHETHER CAUSED BY THE NEGLIGENCE OF THE RELEASEE(S) OR OTHERWISE.
>
> 4. HEREBY ASSUMES FULL RESPONSIBILITY FOR ANY RISK OF BODILY INJURY, DEATH OR PROPERTY DAMAGE arising out of or related

to the EVENT(S) whether caused by the NEGLIGENCE OF ANY RELEASEE(S) OR OTHERWISE.

5. HEREBY acknowledges that THE ACTIVITIES OF THE EVENT(S) ARE DANGEROUS and involve the risk of serious injury and/or property damage. Each of THE UNDERSIGNED also expressly acknowledges that INJURIES RECEIVED MAY BE COMPOUNDED OR INCREASED BY NEGLIGENT RESCUE OPERATIONS OR PROCEDURES OF THE RELEASEES.

6. HEREBY agrees that this Release and Waiver of Liability, Assumption of Risk and Indemnity Agreement extends to all acts of negligence by the RELEASEES, INCLUDING NEGLIGENT RESCUE OPERATIONS and is intended to be as broad and inclusive as is permitted by the laws of the Province or State in which the EVENT(S) is /are conducted and that if any portion thereof is held invalid, it is agreed that the balance shall, notwithstanding, continue in full legal force and effect.

(*Id.*, ¶ 11 (bold italicized emphasis added).) Plaintiff testified at his deposition that he signed a similar release each time he raced at Byron Dragway, he had to sign it in order to be permitted to race, and he read and understood the terms and conditions of the Release when he signed it. (*Id.*, ¶¶ 38, 41-44.)

## ANALYSIS

To prevail on a summary judgment motion, "the movant [must] show[] that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). At this stage, the court may not weigh evidence or determine the truth of the matters asserted. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986). We view all evidence and draw all inferences in favor of the non-moving party. *Michas v. Health Cost Controls of Ill., Inc.*, 209 F.3d 687, 692 (7th Cir. 2000).

Plaintiff asserts claims of defective design, defective manufacture, failure to warn and negligence against UPR as the entity that "designed, manufactured and sold" the Product. (Am. Compl., Counts I-IV, ¶ 15.) He asserts similar claims against the other defendants, Webco Industries, Inc. ("Webco"), Tig-Vision, Inc. ("Tig-Vision") and Galley-Maid, who allegedly

contributed by "provid[ing] the request[ed] materials and labor for the design and manufacture of the Product." (Am. Compl. ¶ 8.)

UPR, joined by Galley-Maid (collectively, "the moving defendants"), claims that the Release bars plaintiff from bringing his products liability claims because plaintiff released and waived any claim against "equipment and parts manufacturers and suppliers, . . . for the purposes herein referred to as 'RELEASEES,' . . . FOR ANY AND ALL LOSS OR DAMAGE . . . ARISING OUT OF OR RELATED TO THE EVENT(S), WHETHER CAUSED BY THE NEGLIGENCE OF ANY RELEASEE(S) OR OTHERWISE." (Pl.'s LR 56.1(b)(3)(B) Resp., ECF No. 104, ¶ 10.) The moving defendants contend that they are "equipment and parts manufacturers and suppliers" within the meaning of the Release, and the claimed injury arises out of the drag-racing event, so by its plain terms the Release bars plaintiff's claims against them.

The moving defendants principally rely on an unpublished Illinois Appellate Court decision, *Nesbitt v. National Muscle Car Ass'n*, 2014 IL App (1st) 130522-U, in support of their position. *Nesbitt* is strikingly similar to this case, but the Illinois Appellate Court disposed of that case by way of an order entered under Illinois Supreme Court Rule 23(b), which, according to Illinois Supreme Court Rule 23(e), is "not precedential and may not be cited by any party except to support contentions of double jeopardy, *res judicata*, collateral estoppel or law of the case." The moving defendants argue that federal courts such as this one may consider non-precedential Rule 23 orders as persuasive authority. However, the terms of Rule 23 are clear, and the Court declines to rely on *Nesbitt* in predicting how the Illinois Supreme Court would resolve the issues this case presents when the Illinois Supreme Court's own rules would prohibit Illinois courts and litigants from using *Nesbitt* for that purpose.

4

Nevertheless, other Illinois cases firmly establish that exculpatory agreements such as the Release may bar a race participant's claims of negligence arising out of the race. *See Schlessman v. Henson*, 413 N.E.2d 1252, 1253-54 (Ill. 1980); *Hellweg v. Special Events Mgmt.*, 956 N.E.2d 954, 958-59 (Ill. App. Ct. 2011); *Platt v. Gateway Int'l Motorsports Corp.*, 813 N.E.2d 279, 283-85 (Ill. App. Ct. 2004). Plaintiff argues that the Release does not bar his claims because (1) he was not injured in a way that was foreseeable at the time he signed the Release, and (2) the language of the Release is ambiguous. Neither argument has merit.

**Foreseeability**

At the time an exculpatory agreement is signed, the parties need not have contemplated the precise occurrence which results in injury, so long as the injury "falls within the scope of possible dangers ordinarily accompanying the activity and, thus, reasonably contemplated by the plaintiff." *Garrison v. Combined Fitness Ctr., Ltd.*, 559 N.E.2d 187, 190 (Ill. App. Ct. 1990). Plaintiff contends that it was not reasonably foreseeable that the Product would fail while he was performing a wheelie because the UPR representative who sold the Product to plaintiff assured him that the Product would have no problem functioning during the performance of wheelies. (Resp. Br. at 6 (citing Pl.'s LR 56.1(b)(3)(C) Stmt., ¶ 5, ECF No. 104, at 5).)

By this logic, virtually no failure of equipment or other apparatus would be reasonably contemplated by the parties to an exculpatory agreement. The race organizers in *Schlessman*, for example, surely did not believe the upper track embankment was likely to collapse, but the Illinois Supreme Court explained that the likelihood that a particular harm will occur is less important than whether the harm stems from some causative factor that is ordinarily within the scope of the activity that is the subject of the exculpatory agreement:

> The racing of automobiles at a high speed in limited areas gives rise to various situations which have resulted in the death or injury to drivers, mechanics and

> spectators at these events. These accidents may occur because of factors involving mechanical failures, defective design of guardrails, driver error or weather conditions affecting driving surfaces. In sum, a myriad of factors, which are either obvious or unknown, may singly or in combination result in unexpected and freakish racing accidents. Experienced race drivers, such as plaintiff, are obviously aware of such occurrences and the risks attendant to the sport of auto racing. The parties may not have contemplated the precise occurrence which resulted in plaintiff's accident, but this does not render the exculpatory clause inoperable. In adopting the broad language employed in the agreement, it seems reasonable to conclude that the parties contemplated the similarly broad range of accidents which occur in auto racing.

*Schlessman*, 413 N.E.2d at 1253-54. Thus, an exculpatory agreement bars claims stemming from even "freakish" accidents due to "unknown" factors, so long as the accident is within the "broad range of accidents which occur in auto racing" or whatever activity is covered by the exculpatory agreement. *Compare Hellweg*, 956 N.E.2d at 958-59 (claims barred for collision, during bike race on city streets, with nonparticipating cyclist negligently allowed onto race course), *Platt*, 813 N.E.2d at 283-85 (claims barred for collision with tow truck speeding down racetrack in order to dry it), *and Garrison*, 559 N.E.2d at 190 (claims barred for weightlifting injury in health club) *with Simpson v. Byron Dragway, Inc.*, 569 N.E.2d 579, 584-85 (Ill. App. Ct. 1991) (claims not barred for collision with deer on drag strip) *and Larsen v. Vic Tanny Int'l*, 474 N.E.2d 729, 732 (Ill. App. Ct. 1984) (claims not barred for inhalation of harmful vapors in health club).

Plaintiff can hardly contend that the risk of failure of auto parts is beyond the scope of possible dangers ordinarily accompanying auto racing. *Schlessman* specifically mentions "mechanical failures," and anyone with the most basic automotive experience is aware that auto parts sometimes fail to perform as intended or as well as their manufacturers claim they will perform. It is of no consequence that plaintiff had no reason to know that the Product itself was defective or could not perform its intended function, as the "precise occurrence which results in

6

injury need not have been contemplated by the parties at the time the contract was entered into," so long as "the injury falls within the scope of possible dangers ordinarily accompanying the activity." *Garrison*, 559 N.E.2d at 190. Plaintiff's injury falls within the scope of possible dangers ordinarily accompanying auto racing.

**Ambiguity**

Plaintiff argues that the terms "equipment and parts manufacturers and suppliers," which the moving defendants contend apply to them, are ambiguous because it is unclear whether they refer to "manufacturers and suppliers" of any and all "equipment and parts" installed in any participating vehicle, regardless of when they were installed, or whether they refer only to "equipment and parts" specifically intended for use in the October 6, 2012 Byron Dragway event. Plaintiff cites no authority that supports drawing this particular distinction, nor does he cite authority for his contention that the former interpretation would be "impermissibly broad." (Resp. Br. at 4, ECF No. 105.) To the contrary, he concedes that an exculpatory clause may be "broadly worded," so long as it contains "clear language referencing the types of activities, circumstances, or situations that are encompassed by the release." (*Id.* at 5 (citing *Hussein v. L.A. Fitness Int'l, L.L.C.*, 987 N.E.2d 460, 465 (Ill. App. Ct. 2013).)

The Release bars claims arising out of the drag-racing event against "equipment and parts manufacturers and suppliers." Plaintiff was participating in the drag-racing event when he was injured due to an alleged defect in the equipment he was using, and he now seeks to recover for his injury by asserting claims against the manufacturers and suppliers of the equipment and its parts. By any reasonable interpretation of the Release language, that is precisely what he agreed not to do.[1] His claims are barred by the unambiguous terms of the Release.

---

[1] Plaintiff argues that, even if this Court were to rely on *Nesbitt*, that case actually militates *against* granting summary judgment because the court held that there was a triable issue of fact as to the proper interpretation of

7

Thus, plaintiffs' arguments for denying the instant motion are not persuasive, and, based on the above-cited cases, the Release bars plaintiff's negligence claims. It is not entirely clear whether the moving defendants also seek summary judgment on plaintiff's strict liability claims. In UPR's brief (which Galley Maid "adopts and incorporates" as its own (ECF No. 107, ¶ 6)), UPR sometimes refers only to plaintiff's negligence claim without mentioning the strict liability claims, as if they are beyond the scope of the motion. (UPR Mem. Supp. Summ. J., ECF No. 99, at 2, 8-9.) However, UPR's motion and memorandum state that UPR seeks "summary judgment in its favor," without specifying any particular claims.

Assuming that the moving defendants do seek summary judgment on all of plaintiff's claims, including the strict products liability claims, the above-cited cases provide no guidance as to whether the Release bars these claims. *See Garrison*, 559 N.E.2d at 190-91 (acknowledging—without reaching—argument that enforcing an exculpatory agreement in a strict liability context may violate public policy, unlike in a negligence context). The Illinois Appellate Court has held that an exculpatory agreement does not bar strict products liability claims because "strict tort liability is imposed by operation of law as a matter of public policy for the protection of the public[,] . . . and the one liable cannot contract away his own responsibility for having placed a defective product into the mainstream of public use." *Sipari v. Villa Olivia Country Club*, 380 N.E.2d 819, 823 (Ill. App. Ct. 1978) (citing *Suvada v. White Motor Co.*, 210 N.E.2d 182, 187-88 (Ill. 1965), *overruled on other grounds by Frazer v. A.F. Munsterman, Inc.*, 527 N.E.2d 1248, 1254-55 (Ill. 1988), *as stated in Dixon v. Chicago & N.W. Transp. Co.*, 601 N.E.2d 704, 711 (Ill. 1992); and *Haley v. Merit Chevrolet, Inc.*, 214 N.E.2d 347, 352-53 (Ill.

---

"equipment and parts manufacturers and suppliers." 2014 IL App (1st) 130522-U, ¶¶ 16-18. However, the issue the appellate court identified in that case was whether "equipment and parts manufacturers and suppliers" could refer to a party who manufactured the entire car, as opposed to a "component part of the vehicle." *Id.*, ¶18. This case presents no such difficulty because all defendants are component part manufacturers. Even if it were proper for this Court to rely on *Nesbitt*, it would disagree with plaintiff's interpretation of the case.

App. Ct. 1966)); *see also Falkner v. Hinckley Parachute Ctr., Inc.*, 533 N.E.2d 941, 946 (Ill. App. Ct. 1989) (exculpatory agreement barred plaintiff's claims of negligence but void as against public policy to the extent it purported to bar claims of willful and wanton misconduct). This Court agrees. The Release bars plaintiff's negligence claims but not his strict products liability claims.

## CONCLUSION

For the reasons set forth above, the Court grants in part and denies in part UPR and Galley Maid's motions for summary judgment. The motions are granted as to plaintiff's negligence claims. The motions are denied as to the strict products liability claims. A status hearing is set for May 4, 2016 at 9:30 a.m.

**SO ORDERED.**  **ENTERED:** April 25, 2016

**HON. JORGE L. ALONSO**
**United States District Judge**

9